# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| HEATHER GRAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:16-cv-2662-WTL-MPB |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Heather Gray requests judicial review of the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Gray protectively filed her application on October 31, 2012, alleging onset of disability on January 1, 2010.[2] The Social Security Administration ("SSA") initially denied Gray's application on March 7, 2013. After Gray timely requested reconsideration, SSA again denied her claim on July 25, 2013. Thereafter, Gray requested a hearing before an Administrative Law Judge ("ALJ"). An ALJ held a hearing on July 14, 2015, at which Gray, a vocational expert ("VE"), and two medical experts testified. The ALJ issued his decision denying Gray's

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill automatically became the Defendant in this case when she succeeded Carolyn Colvin as the Acting Commissioner of Social Security on January 23, 2017.

[2] In an SSI claim, the application date is the beginning of the relevant period at issue, as benefits are not retroactive. *See* Social Security Ruling ("SSR") 83-20.

application on July 31, 2015. After the Appeals Council denied her request for review on August 6, 2016, Gray filed this action seeking judicial review on October 5, 2016.

## II. **EVIDENCE OF RECORD**

The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

## III. **APPLICABLE STANDARD**

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(b).

At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 416.920(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month durational requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(d). At step four, if the claimant is able to perform her past relevant work, she is not

disabled. 20 C.F.R. § 416.920(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony presented," he must "provide an accurate and logical bridge between the evidence and [his] conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

## IV. **THE ALJ'S DECISION**

The ALJ found at step one that Gray had not engaged in substantial gainful activity since the application date. At step two, the ALJ determined that Gray had the severe impairments of degenerative disk disease, a history of superficial phlebitis in the lower extremity, degenerative joint diseased of the right shoulder, obesity, a depressive disorder, an anxiety disorder with panic attacks, and a post-traumatic stress disorder. The ALJ found at step three that these impairments did not, individually or in combination, meet or equal the severity of one of the listed impairments. The ALJ's residual functional capacity ("RFC") determination was as follows:

> After consideration of the entire record, the Administrative Law Judge finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except: She is able to sit for two hours at a time and for about six hours during an eight-hour workday. However, she should have the

> opportunity to stand for about five minutes every hour. She is able to stand for thirty to sixty minutes at one time. She is able to walk for fifteen to thirty minutes at one time. She is able to stand and/or walk for two hours during an eight-hour workday. She is able to reach overhead occasionally and she is able to reach in other planes frequently. She has no limitations for fingering, grasping or handling objects. She is able to operate foot controls occasionally with the left lower extremity and she is able to operate foot controls with the right lower extremity frequently. She is able to climb ramps or stairs occasionally, but she is not able to climb ladders, ropes or scaffolds. She is not able to crouch or crawl, but she is able to balance, stoop, or kneel occasionally. She should avoid activities that involve exposure to unprotected heights or elevations or moving mechanical parts. She should avoid concentrated exposure to dust, fumes, odors, pulmonary irritants and extreme cold or heat. She is limited to jobs work [sic] that involves performance of simple, repetitive tasks with only occasional interaction with supervisors, coworkers or the public.

R. at 17-18 (footnote omitted). The ALJ concluded at step four that Gray does not have any past relevant work. At step five, the ALJ found, based on VE testimony considering Gray's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that she could perform. Accordingly, the ALJ concluded that Gray was not disabled.

## V. **DISCUSSION**

Gray argues that the ALJ erred in numerous respects, which the Court addresses, in turn below, as necessary to resolve this appeal.

### A. Moderate Difficulties with Concentration, Persistence, or Pace

Gray argues that despite finding that moderate difficulties with concentration, persistence, or pace were supported by the record, the ALJ failed to account for limitations that resulted from those difficulties in his RFC finding. Gray adds that the ALJ further did not include the limitations in hypothetical questions to the VE, which were only conveyed in the identical terms of the RFC finding.

The general rule is simple enough. Regardless of the basis, a hypothetical question put by the ALJ to the VE "must fully set forth the claimant's impairments to the extent that they are

4

supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994); *Indoranto v. Barnhart,* 374 F.3d 470, 473-74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record." (citing *Young v. Barnhart,* 362 F.3d 995, 1003 (7th Cir. 2004) (additional citations omitted)); *see also* SSR 96–5p, 1996 WL 374183, at *5 (RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence"); 20 C.F.R. § 416.945. "Among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (citing *Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir.2009)). "Although it is not necessary that the ALJ use the precise terminology of 'concentration,' 'persistence,' or 'pace,' we will not assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record." *Id.* at 814 (citing *Yurt,* 758 F.3d at 857).[3]

The ALJ found that the record supported moderate difficulties in concentration, persistence, or pace when assessing the "paragraph B" criteria used to evaluate the severity of mental health conditions.[4] R. at 17. The ALJ also gave "great weight" to the opinion of a clinical psychologist, Dr. Olive, who testified as a medical expert at the administrative hearing

---

[3]In response to questioning by Gray's representative, the VE affirmed that he had not assumed any other facts than those that were specifically conveyed to him in the hypothetical questions. R. at 66.

[4]The difficulties identified in the "paragraph B" criteria are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. 20 C.F.R. § 416.920a(d)-(e). Gray does not challenge the ALJ's paragraph B findings. However, the RFC assessment used at steps four and five requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorder listings. SSR 96-8p. Gray challenges the ALJ's RFC finding based on an alleged failure to itemize her more detailed functional restrictions.

after reviewing the complete medical record and concluded that Gray "retains adequate mental functional capacity for work that involves performance of simple, repetitive tasks with only occasional interaction with supervisors, coworkers or the public." R. at 22.

The Seventh Circuit has repeatedly expressed its concerns with translating moderate limitations of concentration, persistence, or pace into limitations as to the skill level demands of a job. "In most cases, however, employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (citing *Stewart*, 561 F.3d at 684-85 (limiting hypothetical to simple, routine tasks did not account for limitations of concentration, persistence, and pace); *see also Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (restricting hypothetical to unskilled work did not consider difficulties with memory, concentration or mood swings)). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620 (citing *Stewart*, 561 F.3d at 684-85; *Craft*, 539 F.3d at 677; *see also* Social Security Ruling 85-15 (1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.")). "[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt*, 758 F.3d at 858-59.

The Court agrees with Gray that *O'Connor-Spinner* is controlling in this case. The ALJ's RFC does not in any way account for temperamental deficiencies in concentration,

persistence, or pace. The VE testified that an individual could not be off task any more than five percent of a workday and remain competitively employed. R. at 64-65. However, the RFC does no more than limit the skill level and interaction, which is inadequate based on the combined holdings in *O'Connor-Spinner* and *Yurt* cited above. The Commissioner argues that this case can be distinguished from *O'Connor-Spinner*:

> The Seventh Circuit has held that when a medical source of record translates his findings into a particular residual functional capacity assessment, the ALJ may reasonably rely on that assessment to formulate his residual functional capacity finding and hypothetical question. *Johansen v. Barnhart*, 314 F.3d 283, 285-86 (7th Cir. 2002) (concluding that the ALJ could reasonably rely upon the opinion of "the only medical expert who made an RFC determination" that translated "findings into a specific RFC assessment"); *see also Milliken v. Astrue*, 397 F. App'x 218, 221-22 (7th Cir. 2010) (affirming ALJ's residual functional capacity finding limiting claimant to unskilled work because medical expert opined that the claimant retained ability to perform "unskilled work tasks" despite her limitations in concentration, persistence, or pace); *Calhoun v. Colvin*, No. 12-204, 2013 WL 3834750, at *10 (N.D. Ind. July 24, 2013) (affirming ALJ's residual functional capacity finding limiting claimant to "simple, repetitive tasks" because the ALJ relied "almost verbatim" on residual functional capacity translation of the state agency psychologist). As described above, that reliance on the psychological medical expert's translation is exactly what occurred in this case.

Dkt. No. 21 at 5-6. However, there is no evidence in this case that the medical expert, Dr. Olive, was aware that the ALJ would find there were moderate difficulties in concentration, persistence, or pace, let alone that he concurred with the ALJ's findings. The terms used by Dr. Olive to describe the limitations he opined were supported in Gray's claim cannot be viewed as a translation of the paragraph B findings that he was not aware of in the first instance. The result may be different if Dr. Olive had opined that Gray had moderate difficulties with concentration, persistence, or pace, articulated limitations that translated that finding, and the ALJ had adopted those opinions. However, the ALJ could not simply rely on only the medical expert's articulated limitations when there is no evidence that they accommodated the ALJ's complete findings. Remand is required to correct this error and ensure that the VE is adequately apprised of all of the limitations supported by Gray's claim.

### B. Gray's Treating Mental Health Counselor's Opinion

Gray also asserts that the ALJ ignored an opinion from her treating mental health counselor, Amanda Brock, LCSW, LCAC. Gray admits that the opinion is not from an acceptable medical source as defined by the regulations. However, sources who have contact with the claimant in their professional capacities are "valuable sources of evidence for assessing impairment severity and functioning. Often these sources have close contact with the individual and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time." SSR 06-03p.

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* The ALJ did not completely ignore Brock's opinion, referencing that Gray's "former therapist completed an assessment in January of 2014 indicating that the claimant was having only moderate difficulties (Ex. 17F)." R. at 21 (citing R. at 1063-72). However, the ALJ provides no further discussion of the opinion, the weight it was given, or the reasons supporting the weight it was given; nor does he recognize any conflict with the opinion and his decision and explain how the conflict was resolved. The portion of Brock's opinion that the ALJ explicitly references could support his finding that Gray would have moderate difficulties with concentration, persistence, or pace. However, Brock opined that those moderate difficulties would result in specific limitations that differ from the ALJ's RFC finding; specifically, she described Gray's ability to maintain attention and concentration for two-hour periods was ninety percent of normal and her ability to perform at a consistent pace without an unreasonable number and length of rest periods was ninety percent of normal. R. at 1072. These restrictions appear to

preclude all work in light of the VE's testimony that an individual may only be off task a maximum of five percent of the day and remain employable. However, the ALJ never mentions the limitations found by Brock and does not explain why he discounted her opinion. On remand, the ALJ should correct this omission.

### C. Gray's Other Arguments

Gray also raises issues relating to the ALJ's credibility determination and the VE's testimony. Each of these issues should be reexamined by the ALJ on remand in light of the reassessment of the RFC and opinion evidence as discussed above.

### VI. **CONCLUSION**

For the reasons set forth above, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with the Court's Entry.

SO ORDERED: 3/21/18

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification